UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VANESSA VACHON, | * | |
|     Plaintiff, | * | |
| v. | * | Civil Action No. EA-25-681 |
| ALEXANDER SCOTT, | * | |
|     Defendant. | * | |

### MEMORANDUM OPINION

Plaintiff Vanessa Vachon initiated the above-captioned action on February 28, 2025, seeking damages, interest, attorney's fees and costs, and an order requiring Defendant Alexander Scott's compliance with his alleged financial support obligations under the Immigration and Nationality Act, 8 U.S.C. § 1183a(a)(1)(A). ECF No. 1. Pending before the Court is Ms. Vachon's motion for a preliminary injunction. ECF No. 23. The undersigned held a hearing on the motion on July 7, 2025. ECF No. 41. For the reasons set forth below, Ms. Vachon's motion is denied.

**I.   BACKGROUND**

    **A.   Immigration and Court Filings**

In 2010, Mr. Scott filed an I-130 Petition for an Alien Relative with the United States Citizenship and Immigration Services on behalf of Ms. Vachon, who at the time was his spouse. ECF Nos. 1-4; 23-6 (Request No. 4). In conjunction with this petition, Ms. Vachon applied to become a lawful permanent resident of the United States. ECF Nos. 1-5; 23-6 (Request No. 5). In support of Ms. Vachon's application, Mr. Scott signed an I-864 Affidavit of Support that identified Ms. Vachon as the immigrant beneficiary. ECF Nos. 1-3; 23-6 (Request Nos. 1–2). In Part 8 of this affidavit, which contains the sponsor's contract, Mr. Scott agreed that if Ms. Vachon were granted lawful permanent resident status, he must provide Ms. Vachon with "any

support necessary to maintain . . . her at an income that is at least 125 percent of the Federal Poverty Guidelines for . . . her household size" until his obligations under the contract terminate. ECF No. 1-3 at 7[1]; *see also* 8 U.S.C § 1183a(a)(1)(A) (defining the requirements of a sponsor's affidavit of support). Ms. Vachon became a lawful permanent resident on February 10, 2011. ECF No. 23-6 (Request No. 6). Mr. Scott admits that Ms. Vachon's lawful permanent residency status was based on his submission of the I-130 petition and I-864 affidavit. *Id.* (Request No. 7). Mr. Scott further admits that none of the circumstances that would terminate his obligations under the affidavit of support contract have occurred. ECF No. 23-6 (Request Nos. 12–16); *see also* 8 C.F.R. § 213a.2(e)(2)(i)(A)-(E). Ms. Vachon and Mr. Scott divorced on August 21, 2020. ECF No. 30-2.

Ms. Vachon filed the instant action to recover an award of damages "equal to the difference between Ms. Vachon's annual income and 125 percent of the federal poverty line" from when Ms. Vachon became a lawful permanent resident (February 10, 2011) to entry of judgment, as well as attorney's fees, costs, and interest. ECF No. 1 ¶¶ 58, 63, 66, VI.C, E, G-H. On June 4, 2025, Ms. Vachon moved for a preliminary injunction requiring Mr. Scott to maintain her income at 125 percent of the federal poverty line during the pendency of this litigation. ECF No. 23. As set forth in the Court's prior Memorandum Order, the operative statute requires a sponsor "to provide support to maintain the sponsored alien at *an annual income* that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable." ECF No. 40 at 3; *Vachon* v. *Scott*, Civil Action No. EA-25-681, 2025 WL 1837451, at *2 (D. Md. July 3, 2025) (quoting 8 U.S.C. § 1183a(a)(1)(A)). The Court previously concluded that based on the governing statute and interpretive case law, income must be assessed

---

[1] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system (CM/ECF) printed at the top of the cited document.

on an annual basis.  ECF No. 40 at 3; *Vachon*, 2025 WL 1837451, at *2 (collecting cases).  Thus, when evaluating Ms. Vachon's motion for a preliminary injunction, the Court considers only Ms. Vachon's income during the present calendar year (2025).

In support of her motion, Ms. Vachon filed, among other things, Mr. Scott's responses to her first set of discovery responses (ECF No. 23-6), a sworn declaration by Ms. Vachon (ECF No. 24), bank statements (ECF No. 24-1), a utility bill (ECF No. 24-2), and a social security statement (ECF No. 24-3).  In support of his opposition to Ms. Vachon's motion, Mr. Scott filed information regarding the value of Ms. Vachon's home (ECF No. 27-1).  In connection with a related motion regarding the scheduling of the motion hearing, Mr. Scott filed additional information regarding the value of Ms. Vachon's home.  ECF Nos. 38-1, 38-2, 39.  The Court held a hearing on Ms. Vachon's preliminary injunction motion on July 7, 2025.  At the hearing, the parties tendered, and the Court admitted, additional exhibits that consisted of, among other things, bank accounts, bills, mortgage documents, and the parties' divorce decree.  ECF Nos. 42–43.  Mr. Scott testified on his own behalf.  Ms. Vachon did not appear at the preliminary injunction hearing and thus did not testify.[2]  Based on the evidence presented in connection with the motion filings and at the hearing, the Court makes the following findings of fact.

**B.**     **Findings of Fact**

Ms. Vachon is currently unemployed, and she has not worked during 2025.  ECF No. 24 ¶ 3.  To cover her living expenses Ms. Vachon uses her personal savings and "modest loans from [her] father, which [she] is expected to repay."  *Id.* at ¶ 4.  Ms. Vachon's monthly average posted balance on her checking account fluctuated between a high of $36,946 in January of 2025 and a low of $32,675 in June of 2025.  ECF Nos. 24-1, 42 (Ex. 1 (bank statement) at 1, 14).  Ms.

---

[2] Counsel for Ms. Vachon proffered that she was unable to attend due to a medical condition for which she is under treatment.  Counsel declined the Court's invitation to reschedule the hearing as a reasonable accommodation and opted to proceed on the existing record.

3

Vachon's monthly checking account statements reflect only two deposits to her account during 2025, excluding de minimis refunds and other deposits. ECF Nos. 24-1, 42. These deposits consist of two wire transfers: $2,408.13 on January 9, 2025, and $3,990.00 on March 17, 2025. ECF No. 24-1 at 2, 10. Ms. Vachon argued that these wire transfers are loans from her father, but offered no evidence to substantiate that claim other than a general declaration that she receives "modest loans" from her father. ECF Nos. 24 ¶ 4; 30 at 5–6.

Ms. Vachon currently resides in the house in which she lived with Mr. Scott during their marriage. ECF No. 24 ¶ 5. Ms. Vachon used a loan from her father to pay off the remainder of the mortgage to the home in 2023, and she agreed to "sell the home once [she] ha[s] become financially stable and repay him for the loan." *Id.* On June 4, 2025, Ms. Vachon attested that she has "been unable to pay [her] utilities and owe[s] over $3,300." *Id.* at ¶ 6. Yet, Ms. Vachon made a payment of $2,547.00 on June 10, 2025, to avoid a shutoff of her utilities, and she owes a remaining $1,014.69 utility payment by July 9, 2025. ECF No. 42 (Ex. 3 (utility bill) at 1). In addition, Ms. Vachon attests that she has consumer debt consisting of an open judgment of $17,744.00 for an American Express credit card, an open judgment of $7,041.00 for a Bank of America credit card, an overdue balance of $7,015.00 for a Chase credit card, and an open judgment between $5,000.00 and $30,000.00 for "LG [electric] in Maryland District Court." ECF No. 24 ¶ 8.

At the hearing, Mr. Scott testified that during his marriage to Ms. Vachon he witnessed her father and other relatives provide her financial support in the form of thousands of dollars in cash. ECF No. 41. Mr. Scott testified that he does not know Ms. Vachon's current income, and he has not taken any steps to ascertain her current income. *Id.* Mr. Scott has not provided financial assistance to Ms. Vachon in 2025. ECF No. 23-1 at 7. Mr. Scott also tendered information suggesting that Ms. Vachon's three-bedroom, three-bathroom single family home,

which she owns free and clear, is worth more than $500,000. ECF Nos. 27-1, 38-1, 38-2, 39. Ms. Vachon did not contest this valuation.

In 2025, 125 percent of the federal poverty line for a family of one in the contiguous United States is approximately $1,630.21 per month.[3] Annual Update of the HHS Poverty Guidelines, 90 Fed. Reg. 5917-01, 2025 WL 224799 (Jan. 17, 2025); *see also* ECF Nos. 23-1 at 6; 27 at 2–3. The total of this monthly income from January 1, 2025, through July 31, 2025, is approximately $11,411.47.

## II.   DISCUSSION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter* v. *National Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also A.A R P.* v. *Trump*, 145 S. Ct. 1364, 1368 (2025) ("District courts should approach requests for preliminary relief with care and consideration."); *Fairbanks Cap. Corp.* v. *Kenney*, 303 F. Supp. 2d 583, 588 (D. Md. 2003) ("Injunctive relief granted early in the course of litigation should be the exception rather than the rule."). Given its extraordinary nature, injunctive relief "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. To secure a preliminary injunction, a plaintiff must establish (1) the likelihood of success on the merits, (2) the likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in plaintiff's favor, and (4) that an injunction is in the public interest. *Id.* at 20. The district court "is entitled to deny preliminary injunctive relief on the failure of any single *Winter* factor, without fully evaluating the remaining factors." *Vitkus* v. *Blinken*, 79 F.4th 352, 361 (4th Cir. 2023).

---

[3] In 2025, the federal poverty line for a family of one in the 48 contiguous United States and the District of Columbia is $15,650, 125 percent of which is $19,562.50. Divided evenly across 12 months, 125 percent of the federal poverty line for 2025 calculates to approximately $1,630.21 per month.

A preliminary injunction's purpose "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas* v. *Camenisch*, 451 U.S. 390, 395 (1981). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* Indeed, "[c]rafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Lackey* v. *Stinnie*, 604 U.S. --, 145 S. Ct. 659, 667 (2025) (quoting *Trump* v. *International Refugee Assistance Project*, 582 U.S. 571, 579 (2017)).

### A.    Likelihood of Success

The question of Ms. Vachon's likelihood of success on the merits of her claims turns on Mr. Scott's support obligations and Ms. Vachon's annual income. Resolution of the first inquiry is clear. As set forth previously, *see* Section I.A., *supra*, filing an affidavit of support commits an immigrant's sponsor "to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable." 8 U.S.C. § 1183a(a)(1)(A). The parties agree that Mr. Scott signed the affidavit of support, which remains in effect, and that he has not provided any financial support to Ms. Vachon in 2025. The support obligation of a United States citizen who sponsors an immigrant "continues forever until the sponsored immigrant becomes a citizen, gains secure employment as defined under the statute, the sponsor or the immigrant dies, or their immigration status changes in a relevant way." *Nwauwa* v. *Ugochukwu*, 1:18-1130-RP, 2019 WL 2077048, at *2-3 (W.D. Tex. May 10, 2019). Divorce is not a terminating event. *Id.*

Evaluation of Ms. Vachon's annual income requires the Court to consider the money Ms. Vachon received from her father, her assets, and whether either can be considered annual income

under the operative statute. Ms. Vachon claims that the two wire transfers she received in 2025 (totaling $6,398.13) are loans from her father. Mr. Scott argues that the funds Ms. Vachon received from her father is more accurately characterized as gifts rather than loans. ECF No. 27. Because Ms. Vachon has provided no promissory notes or other documentation supporting her assertion that the monies she received from her father are loans, and she has also provided no evidence that she has repaid her father either in part or in full, the Court agrees with Mr. Scott that these payments are more accurately characterized as gifts. *See Al-Mansour* v. *Shraim*, Civil Action No. CCB-10-1729, 2011 WL 1457102, at *3 (D. Md. Apr. 14, 2011) (explaining that monetary support that a plaintiff received from family and friends was characterized as loans because the plaintiff was able to provide promissory notes for each of the loans); *Ibrhim* v. *Abdelhoq*, No. 3:22-CV-01260-DAC, 2024 WL 4988265, at *8 (N.D. Ohio Nov. 7, 2024) (explaining that monetary support that a plaintiff received from a family in her community was characterized as a loan because she repaid the family for their financial support). This Court has previously held that gifts may constitute annual income. *Toure-Davis* v. *Davis*, Civil Action No. WGC-13-916, 2015 WL 993575, at *5, *11 (D. Md. Mar. 4, 2015) (explaining that financial support that the plaintiff received from sources other than the sponsor constituted the plaintiff's income); *see also Golipour* v. *Moghaddam*, 438 F. Supp. 3d 1290, 1300 (D. Utah 2020) ("[T]he immigrant's income is determined by qualifying wages, gifts, and other benefits the immigrant received in the year or years for which the Form I-864 is enforceable."). In making this determination, "the Court is mindful of the purpose of the Affidavit of Support, that the sponsored immigrant's income remain sufficient to prevent him or her from becoming a public charge, while still striking a balance to ensure the sponsored immigrant is not unjustly enriched." *Tsanev* v. *Tsanev*, C21-1667-MLP, 2022 WL 3566759, at *5 (W.D. Wash. Aug. 18, 2022). The

Court therefore finds that the two transfers totaling $6,398.13 that Ms. Vachon received from her father in 2025 are cash gifts that constitute annual income.

At the hearing, Mr. Scott also contended that Ms. Vachon's assets should contribute to her annual income. ECF No. 41. In his Answer, Mr. Scott asserts that $95,600.00 in Ms. Vachon's home equity should count as income for Ms. Vachon because the home has increased in value since the time that Ms. Vachon acquired legal right to the home. ECF No. 11 ¶ II.H. Additionally, Mr. Scott argued at the hearing that a portion of the money in Ms. Vachon's bank account should constitute annual income because the affidavit of support allows for a sponsor to report a portion of an immigrant's assets as income when the assets are "three times the difference between the sponsor's household income and the Federal poverty line for the sponsor's household size." 8 C.F.R. § 213a.2(c)(2)(iii)(B)(1). Mr. Scott, however, cited to no authority supporting his argument that Ms. Vachon's assets should be used to calculate her annual income in a manner similar to the calculation of a sponsor's income in the affidavit of support.

This Court has held that assets are not considered income for purposes of measuring a plaintiff's income to offset a sponsor's support obligations. *Al-Mansour*, 2011 WL 345876, at *5; *see also Golipour*, 438 F. Supp. 3d at 1229-1300 (dowry worth $150,000 to $300,000 that was paid prior to execution of the affidavit of support was not permissibly considered as income). The Court therefore concludes that Ms. Vachon's assets consisting of the value of her home and the money in her checking account do not qualify as income. Ms. Vachon has established a likelihood of success on the merits through demonstrating that Mr. Scott has a support obligation and her income ($6,398.13) falls below 125 percent of the federal poverty line for a family of one for the period of January 2025 through July of 2025 ($11,411.47).

8

## B. Irreparable Harm

"Generally, irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *Coreas* v. *Bounds*, 451 F. Supp. 3d 407, 428 (D. Md. 2020) (quoting *Multi-Channel TV Cable Co.* v. *Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994)). "To establish irreparable harm, the movant must make a clear showing that it will suffer harm that is neither remote nor speculative, but actual and imminent and that the harm cannot be fully rectified by the final judgment after trial." *Elev8 Baltimore, Inc.* v. *Corporation for Nat'l & Cmty. Serv.*, Civil Action No. MJM-25-1458, 2025 WL 1865971, at *24 (D. Md. July 7, 2025) (quoting *Mountain Valley Pipeline, LLC* v. *6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019) (internal quotation marks omitted).

Ms. Vachon argues that living below 125 percent of the federal poverty line is irreparable harm *per se*. ECF No. 23-1 at 12–13. Some courts have found that irreparable harm may occur when a plaintiff seeking preliminary injunctive relief to enforce financial support obligations under Section 1183a(a)(1)(A) is unable to secure housing or meet "basic day-to-day needs." *Mao* v. *Bright*, 645 F. Supp. 3d 805, 813 (S.D. Ohio 2022); *Sultana* v. *Hossain*, 575 F. Supp. 3d 696, 699 (N.D. Tex. 2021); *but see Nevarez* v. *Nevarez*, No. EP-22-CV-442-DCG-MAT, 2023 WL 3910258, at *5 n.5 (W.D. Tex. June 7, 2023) (observing that "financial injury compensable by monetary relief generally does not constitute irreparable harm" and concluding that *Mao* and *Sulrana* did not adequately consider precedent and whether the plaintiff had an adequate remedy at law). This Court and others have found that plaintiffs with income levels below the 125 percent of federal poverty line threshold faced irreparable harm due to the mere fact of their income levels, but those cases involved plaintiffs experiencing less stable housing and financial situations than Ms. Vachon. *E.g.*, *Jubber* v. *Jubber*, Civil Action No. JKB-19-0717, 2019 WL 2304656, at *1 (D. Md. May 30, 2019) (plaintiff living in subsidized housing provided by his

9

employer); *Mao*, 645 F. Supp. 3d at 809 (plaintiff lacking the financial resources to pay for basic needs and living in a "precarious" situation after being evicted from her apartment for being unable to pay rent); *Sultana*, 575 F. Supp. 3d at 699 (plaintiff dependent on her brother for shelter and non-financial support while caring for her special needs son).

Here, Ms. Vachon's income level alone does not constitute an irreparable harm *per se* because she lives in and owns a home free-and-clear that is worth more than $500,000 and has held on average, more than $32,000 in her checking account throughout 2025. Her financial circumstances thus do not appear to be "dire," *Mao*, 645 F. Supp. 3d at 814, so as to warrant the extraordinary remedy of preliminary injunctive relief. In contrast to other plaintiffs who have been granted such relief, the existing record reflects that Ms. Vachon has sufficient resources to meet her financial needs during the pendency of this litigation.

### C.    Balance of Equities

The parties stipulate that "[n]o independent evidence or legal argument is required with respect to the third *Winter* element," and "that the Plaintiff's Motion succeeds or fails on the strength of the other three *Winter* elements." ECF No. 37 at 2. Even so, Ms. Vachon as plaintiff "bear[s] the burden of proof in showing that the 'balance of harms' favors imposition of injunctive relief." *National Res. Def. Council, Inc.* v. *Watkins*, 954 F.2d 974, 983 (4th Cir. 1992). As discussed, Ms. Vachon has not carried her burden in demonstrating irreparable harm and thus if the Court were to consider this factor, it would weigh in favor of denying the preliminary injunction.

### D.    Public Interest

"In considering whether the public interest favors the grant of an injunction, the district court should focus on whether a critical public interest would be injured by the grant of injunctive relief." *Lonza Walkersville, Inc.* v. *Adva Biotechnology Ltd.*, 581 F. Supp. 3d 736,

751 (D. Md. 2022) (internal quotation marks and citation omitted). The underlying purpose of the affidavit of support at issue in this case is to prevent admission of immigrants who are likely to become public charges into the United States. *Younis* v. *Farooqi*, 597 F. Supp. 2d 552, 554 (D. Md. 2009); *Toure-Davis*, 2015 WL 993575, at *3. The public interest that Congress sought to uphold with the affidavit of support is to shift the risk of supporting immigrants who may come to rely on outside assistance away from taxpayers and onto an immigrant's sponsor. *Mao*, 645 F. Supp. 3d at 814; *Sultana*, 575 F. Supp. 3d at 700. As set forth previously, Ms. Vachon's financial circumstances do not appear to be "dire," and she appears unlikely to become a public charge during the pendency of litigation. The public interest advanced by the affidavit of support is therefore unlikely to be affected by the grant or denial of a preliminary injunction.

In sum, Ms. Vachon has not carried her burden to establish that she is entitled to the extraordinary remedy of preliminary injunctive relief.

### III. CONCLUSION

For the foregoing reasons, Ms. Vachon's motion for a preliminary injunction (ECF No. 23) is denied. A separate Order follows.

Date: July 31, 2025                               /s/
                                                               Erin Aslan
                                                               United States Magistrate Judge