UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VANESSA VACHON,                          *

    Plaintiff,                           *

v.                                       *          Civil Action No. EA-25-681

ALEXANDER SCOTT,                         *

    Defendant.                           *

**MEMORANDUM OPINION AND ORDER**

Plaintiff Vanessa Vachon initiated the above-captioned action on February 28, 2025, seeking damages, interest, attorney's fees and costs, and an order requiring Defendant Alexander Scott's compliance with his alleged financial support obligations under the Immigration and Nationality Act, 8 U.S.C. § 1183a(a)(1)(A).  ECF No. 1.  Pending before the Court is Ms. Vachon's motion for appointment of a guardian ad litem, which Mr. Scott does not oppose.[1]  ECF No. 62; 62-1.  No hearing is necessary.  Local Rule 105.6 (D. Md. Dec. 1, 2025).

## I.    BACKGROUND[2]

In 2010, when the parties were married, Mr. Scott sponsored Ms. Vachon's application to become a lawful permanent resident of the United States.  *Vachon* v. *Scott*, Civil Action No. EA-25-681, 2025 WL 2194589, at *1 (D. Md. July 31, 2025).  In Part 8 of the I-864 Affidavit of Support Mr. Scott submitted on Ms. Vachon's behalf, Mr. Scott agreed that if Ms. Vachon were

---

[1]  Mr. Scott was represented by counsel in this action until December 23, 2025, when the Court granted counsel's motion to withdraw.  ECF Nos. 51–52.  Mr. Scott has been self-represented since that time.

[2]  Additional factual background is set forth in Section I of the Court's previous Memorandum Opinion denying Plaintiff Vanessa Vachon's motion for a preliminary injunction. *Vachon* v. *Scott*, Civil Action No. EA-25-681, 2025 WL 2194589, at *1 (D. Md. July 31, 2025); ECF No. 40.  The undersigned includes here only the factual background and procedural history necessary to contextualize discussion of the pending motion.

granted lawful permanent resident status, he must provide Ms. Vachon with "any support necessary to maintain . . . her at an income that is at least 125 percent of the Federal Poverty Guidelines for . . . her household size" until his obligations under the contract terminate. *Id.*; *see also* 8 U.S.C § 1183a(a)(1)(A) (defining the requirements of a sponsor's affidavit of support). Ms. Vachon and Mr. Scott divorced in 2020. *Vachon*, 2025 WL 2194589, at *1. Ms. Vachon subsequently initiated the instant action to recover an award of damages "equal to the difference between Ms. Vachon's annual income and 125 percent of the federal poverty line" from when Ms. Vachon became a lawful permanent resident (February 10, 2011) to entry of judgment, as well as attorney's fees, costs, and interest. *Id.*; *see also* ECF No. 1.

On June 4, 2025, Ms. Vachon moved for a preliminary injunction requiring Mr. Scott to maintain her income at 125 percent of the federal poverty line during the pendency of this litigation. *Vachon*, 2025 WL 2194589, at *1; *see also* ECF No. 23. The Court held a hearing on the motion on July 7, 2025. *Vachon*, 2025 WL 2194589, at *2; ECF No. 41. When Ms. Vachon did not appear at the hearing, her counsel "proffered that she was unable to attend due to a medical condition for which she is under treatment." *Vachon*, 2025 WL 2194589, at *2 & n.2. In connection with the instant motion, Ms. Vachon's counsel filed a declaration in which he attested that Ms. Vachon "communicated to [him] that she [had] had an acute anxiety attack the morning of the hearing." ECF No. 62-3 ¶ 10. Ms. Vachon's counsel further attested that he had unusual difficulty securing written discovery from Ms. Vachon regarding her financial standing. *Id.* at ¶ 11. Ms. Vachon's counsel enlisted the assistance of Ms. Vachon's friend, who "shared with [him] for the first time information about Ms. Vachon's acute mental health struggles," and opined that "Ms. Vachon struggles to handle the basic logistics of daily life." *Id.* at ¶ 12. Ultimately, this friend "ended her assistance on the case, citing an inability to work with Ms. Vachon, specifically in light of Ms. Vachon's mental health challenges." *Id.* at ¶ 13.

2

The Honorable Charles D. Austin facilitated a settlement conference with Ms. Vachon, her counsel, and self-represented Mr. Scott on January 27, 2026.  ECF Nos. 48; 62-3 ¶ 17.  Judge Austin held the conference virtually at Ms. Vachon's request as a mental health accommodation.  ECF No. 62-3 ¶ 18.  Ultimately, Ms. Vachon joined the conference approximately 30 minutes late and disconnected after approximately one hour.  *Id.* at ¶¶ 20–21; ECF No. 55 at 1.[3]  On February 3, 2026, Ms. Vachon's counsel filed a status report in which he indicated that he was "assessing whether it is possible to continue representation [of Ms. Vachon] in light of constraints imposed by the rules of professional conduct, including Maryland Rule 19-301.14."  ECF No. 55 at 1.  The Court granted counsel's request for "30 days in which to file a motion to withdraw, or, in the alternative seek appropriate procedural safeguards under Maryland Attorneys' Rule of Professional Conduct 1-301.14(b)."  ECF No. 55 at 2; *see also* ECF No. 56.

On March 5, 2026, Ms. Vachon's counsel filed the instant motion in which he seeks appointment of Ms. Vachon's father, Marc Vachon, as Ms. Vachon's guardian ad litem to assist in the prosecution of the instant action.  ECF Nos. 62 at; 62-3 ¶ 23.  In support of the motion, Ms. Vachon's counsel attested that he "cannot effectively represent Ms. Vachon as counsel without the appointment of a guardian ad litem [ ] who has the authority to make litigation-related decisions on her behalf."  ECF No. 62-3  ¶ 25.  Ms. Vachon's counsel further attested that he will move to withdraw as counsel if the Court declines to appoint a guardian ad litem.  *Id.* at ¶ 26.  Through a sworn declaration filed in support of the pending motion, Mr. Vachon attested that Ms. Vachon "has struggled with acute mental health challenges over recent years" that "impact [her] ability to conduct the normal activities of daily life," and that he is willing to serve as her guardian ad litem in this action.  ECF No. 62-2 ¶¶ 3–4.

---

[3]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system (CM/ECF) printed at the top of the cited document.

## II.    DISCUSSION

Federal Rule of Civil Procedure 17(c)(2) provides, in pertinent part, that "[t]he court must appoint a guardian ad litem--or issue another appropriate order--to protect a minor or incompetent person who is unrepresented in an action."  "The Rule allows this Court to appoint a guardian ad litem, but it does not compel it to do so.  Rather, it grants the Court considerable discretion to issue an 'appropriate order' to protect the interest of an unrepresented, incompetent litigant."  *Hardy* v. *El Sayed*, Civil Action No. GJH-16-2868, 2017 WL 2399328, at *6 (D. Md. May 30, 2017) (citing *Seibels, Bruce & Co.* v. *Nicke*, 168 F.R.D. 542, 543 (M.D.N.C. 1996)).  A prior finding of incompetence is not required to appoint a guardian ad litem.  *Fonner* v. *Fairfax Cnty., Va.*, 415 F.3d 325, 330 (4th Cir. 2005) ("Nothing in the rule prohibits the district court from appointing a guardian ad litem to represent a person not previously adjudicated as incompetent through a state proceeding."); *accord Johnson* v. *City of Fayetteville*, No. 5:12-CV-456-F, 2014 WL 3738310, at *6-7 (E.D.N.C. July 29, 2014); *Demby* v. *Maryland Dep't of Health & Mental Hygiene*, Civil Action No. CCB-06-1816, 2011 WL 5853266, at *2 (D. Md. Nov. 21, 2011).  Instead, a "'federal district court may . . . appoint a guardian ad litem in its discretion' where the district court believes the appointment is in the . . .  incompetent's interests."  *Fonner*, 415 F.3d at 330 (quoting *Genesco, Inc.* v. *Cone Mills Corp.*, 604 F.2d 281, 285 (4th Cir. 1979)); *accord Langley* v. *Dollard*, No. 2:22-CV-1275-RMG, 2024 WL 4723295, at *1 (D.S.C. Oct. 31, 2024); *Hardy*, 2017 WL 2399328, at *6; *Gross* v. *State of Maryland*, Civil Action No. WMN-15-2041, 2016 WL 738690, at *1 (D. Md. Feb. 23, 2016).

Rule 17(c) "does not indicate the basis upon which a court determines the predicate fact that a party not already legally adjudicated to be so, is presently 'incompetent.'"  *Hudnall* v. *Sellner*, 800 F.2d 377, 385 (4th Cir. 1986).  Courts in this Circuit have therefore turned to Rule 17(b), which governs capacity to sue or be sued.  *Kollsman, a Div. of Sequa Corp.* v. *Cohen*, 996

4

F.2d 702, 705 (4th Cir. 1993) (holding that appointment of a guardian ad litem is governed by Rules 17(b)-(c) in cases involving federal question jurisdiction). Subsection (b)(1) directs that an individual's capacity is determined by their domicile. *Nicholson* v. *Zimmerman*, No. 1:19CV585, 2020 WL 5518701, at *5 (M.D.N.C. Sept. 14, 2020) (observing that "courts look to state law to determine a litigant's competency under Rule 17"); *Hope* v. *Equifax*, Civil Action No. RWT 07-1185, 2008 WL 11366450, at *4 (D. Md. Sept. 3, 2008) ("As Plaintiff is domiciled in Maryland, the Court must apply Maryland law to any inquiry as to Plaintiff's competence."). Here, because Ms. Vachon resides in Maryland (ECF No. 1 ¶ 10) the undersigned applies Maryland law within the Rule 17 framework.

"Under Maryland law, plaintiff retains a presumption of competency." *Lanahan* v. *Clifton T. Pirkins Hosp. Ctr.*, Civil Action No. JFM-16-821, 2017 WL 3668751, at *2 (D. Md. Aug. 23, 2017) (citing *Peaks* v. *State*, 419 Md. 239, 251 (2011)); *see also Hardy*, 2017 WL 2399328, at *6 ("Under Maryland law, a person is presumed competent to stand trial and adults are presumed to be capable of making their own informed decisions, even after involuntary admission to a psychiatric hospital."). Appointment of a guardian ad litem in the past, status as an involuntary patient at a secure psychiatric hospital, and "bizarre and delusional statements," for example, are insufficient to establish incompetency under Maryland law. *Lanahan*, 2017 WL 3668751, at *2. Instead, Maryland law requires "clear and convincing evidence that . . . [a] person lacks sufficient understanding or capacity to make or communicate responsible personal decisions, including provisions for health care, food, clothing, or shelter" because of, as relevant here, "any mental disability" or "disease" and that "[n]o less restrictive form of intervention is available that is consistent with the person's welfare and safety." Md. Code Ann., Est. & Trusts § 13-705(b); *see also Hope*, 2008 WL 11366450, at *4 (relying on Section 13-705(b) for the substantive standard for appointment of a guardian ad litem under Rule 17(c)). This standard is

consonant with the United States Court of Appeals for the Fourth Circuit's articulation of what constitutes incompetency under Rule 17(c): "[w]hat the rule undoubtedly contemplates is that form of mental deficiency which—whether or not accompanied by other forms of personality disorder—affects the person's practical ability 'to manage his or her own affairs.'" *Hudnall*, 800 F.2d at 385.[4]  Courts in this Circuit have appointed a guardian ad litem where, for example, a party had an intellectual or developmental disability, *Fonner*, 415 F.3d at 330; traumatic brain injury, *Demby*, 2011 WL 5853266, at *1; or dementia, *Johnson*, 2014 WL 3738310, at *6.  On the other hand, courts have declined to appoint a guardian ad litem when presented with a "limited, dated, and contradictory" record of incompetency, *Nicholson*, 2020 WL 5518701, at *7; or evidence that is "simply too old," *Hope*, 2008 WL 11366450, at *4.

Here, the existing record does not support appointment of  Mr. Vachon (or anyone else) as guardian ad litem for Ms. Vachon.  Consent among Ms. Vachon's counsel, Ms. Vachon's father, and Mr. Scott is an inadequate basis upon which to grant the requested relief.  Importantly, the record contains only a single hearsay reference to Ms. Vachon's position on appointment of a guardian ad litem and does not, in the alternative, provide any independent, professional assessment of her ability to form such views.  ECF No. 62-2 ¶ (Mr. Vachon attesting that he "discussed this motion with [Ms. Vachon], who supports the request to have [him] appointed as her guardian ad litem.").  Further, the record consists of only vague references to Ms. Vachon's mental health issues of an unspecified nature and timeline (*e.g.*, ECF No. 62-2 ¶ 3 ("[Ms. Vachon] has struggled with acute mental health challenges over recent

---

[4]  In *Hudnell*, the United States Court of Appeals for the Fourth Circuit noted that its articulation of the incompetency standard was consistent with that set forth in Maryland statutory law.  *Hudnell* v. *Sellner*, 800 F.2d 377, 385 (4th Cir. 1986).  Although *Hudnell* cited to Section 13-201 in the Protection of Property subtitle instead of Section 13-705 in the Guardian of the Person subtitle, the substantive criteria set forth in both are the same.  *Compare* Md. Code Ann., Est. & Trusts § 13-201(c) *with* Md. Code Ann., Est. & Trusts § 13-705(b).

years."); references to an anxiety attack (ECF No. 62-3 ¶ 10); conclusory opinions of an

unqualified lay witness (*e.g.*, ECF No. 62-3 ¶ 12 (describing a friend's statement to Ms.

Vachon's counsel that "Ms. Vachon struggles to handle the basic logistics of daily life"); and

counsel's challenges with securing Ms. Vachon's appearances at court proceedings and

collecting responsive written discovery materials (ECF No. 62-3 ¶¶ 9, 11, 14, 20).[5]

Ms. Vachon is presumed to be competent and appointment of a guardian ad litem—and

the corresponding deprivation of her individual agency—requires clear and convincing evidence

of her practical inability to manage her own affairs.[6]  The existing record does not support such a

finding.

## III.    CONCLUSION

Based on the foregoing, it is hereby ORDERED that:

1.  Ms. Vachon's motion for appointment of a guardian ad litem (ECF No. 62) is
    DENIED without prejudice to renew; and

2.  The parties are directed to file a joint status report within 14 days of the date of
    this Order.

Date:  March 11, 2026

_____/s/_____
Erin Aslan
United States Magistrate Judge

---

[5]  The undersigned notes that gaps in the existing record cannot be filled by the educational and professional background of Ms. Vachon's counsel or that of his spouse.  ECF No. 62-3 ¶ 3.

[6]  "Clear and convincing evidence is that which supports 'a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.'" *United States* v. *Welsh*, 564 Fed. Appx. 727, 728 (4th Cir. 2014) (quoting *United States* v. *Antone*, 742 F.3d 151, 159 (4th Cir. 2014)).